UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| STATE OF INDIANA, ) | |
| *ex rel*. Steve Carter, Attorney General of Indiana, ) | |
| and the CITY OF EAST CHICAGO, ) | |
| *ex rel*. Steve Carter, Attorney General of Indiana, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:04-CV-506-AS |
| ) | |
| ROBERT A. PASTRICK, *et al*., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM, ORDER AND OPINION**

Defendants Rieth-Riley Construction Company Inc. ("Rieth-Riley"), Edwardo Maldonado ("Maldonado"), George E. Weems ("Weems"), Frank Miskowski ("Miskowski"), Frank Kollintzas ("Kollintzas"), Adrian Santos ("Santos"), Joe De La Cruz ("De La Cruz"), James Harold Fife II ("Fife"), JGM Enterprises Inc. ("JGM"), Robert A. Pastrick ("Pastrick"), Calumet Concrete and Masonry Inc. ("Calumet"), TRI Inc. ("TRI"), Kimberly K. Anderson ("Anderson"), Timothy W. Raykovich ("Raykovich"), A-1 Dave's Tree Service Inc. ("Dave's Tree Service"), Garcia Le & Associates LLC d/b/a Great Lakes Engineering, LLC ("Great Lakes"), Roger and Sons Construction Co. Inc. ("Roger & Sons), and Defendant Jose Valdez Jr. ("Valdez"), collectively referred to as "Defendants," have filed various Motions to Dismiss the civil RICO claims brought by Plaintiffs, State of Indiana, *ex rel*. Steve Carter, Attorney General of Indiana ("State"), and the City of East Chicago, *ex rel*. Steve Carter, Attorney General of Indiana ("City").

On February 23, 2004, Defendant Rieth-Riley filed its Motion to Dismiss for Lack of Standing. That motion was based on two contentions: (1) that the state failed to allege sufficient

injury to its own "business or property," and (2) that the Attorney General lacks standing under federal law to assert civil RICO claims belonging to the City of East Chicago. Rieth-Riley Motion to Dismiss at 1.

Thirteen other Defendants subsequently filed Motions to Dismiss which adopted and incorporated Rieth-Riley's Motion to Dismiss and memorandum in support. Defendant Valdez was later allowed to join in the Rieth-Riley Motion to Dismiss.

Defendant Roger & Sons also filed a Motion to Dismiss under Fed. R. Civ. P. 12, in which it adopted Riley's standing arguments and also argued that (1) the Attorney General lacks standing because he is acting beyond the scope of his delegated state statutory authority in bringing a civil action on behalf of the City of East Chicago; (2) the allegations fail to state a civil RICO claim against Roger & Sons. Also on March 1, Defendant Great Lakes filed a motion to dismiss and supporting memorandum adopting Rieth-Riley's arguments and Roger & Sons' argument. Both Roger & Sons and Great Lakes also assert that Plaintiffs' federal RICO claims are barred by the four-year statute of limitations. Finally, Defendant Dave's Tree Service filed a motion to dismiss and supporting memorandum repeating Rieth-Riley's and Roger & Sons' standing arguments.

Oral arguments were held in open court in Lafayette, Indiana on July 22, 2005 and the issues have been fully briefed by the parties. The Court will address all Motions to Dismiss collectively here.

## I.  Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the Complaint sets forth no viable cause of action upon which relief can be

granted.  Fed. R. Civ. P. 12(b)(6); *Challenger v. Ironworkers Local No. 1,* 619 F.2d 645, 649 (7th Cir. 1980).  In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true.  *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir.1999).   Plaintiffs' claims are subject to dismissal only if it is clear that he can prove no set of facts consistent with the allegations in the complaint that would entitle him to relief.  *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999).

Furthermore, the Court is not required to accept the plaintiffs' legal conclusions.  *Fries v. Helsper*, 146 F.3d 452, 456 (7th Cir. 1998), *cert. denied* 525 U.S. 930 (1998).  Dismissal of a complaint is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## II. Background and Factual Allegations

Plaintiffs' Complaint alleges that Defendants conducted the affairs, or have participated directly or indirectly in the conducting of the affairs, of the City of East Chicago through a pattern of racketeering activities.  They allege that these activities began in August 1996, when Defendant Pastrick established a "Gaming Trust" to illegally divert money and property belonging to East Chicago for his own personal and political use. (Compl. ¶¶ 39 at 10, 45 at 14, and 57-61 at 18-20).  The Complaint further alleges that, beginning in 1999, the Defendants unlawfully used more than $18 million belong to the City of East Chicago to construct sidewalks, driveways, patios, porches, and parking lots, and to trim trees on public and private property, the purpose of which was to corrupt the electoral process in the May 1999 East Chicago Democratic

3

mayoral primary by buying votes. (Compl. ¶¶ 2 at 1, 45 at 14, 46-49 at 15-16, and 67-85 at 22-28).

Plaintiffs allege that this scheme caused the East Chicago general fund bank account to become overdrawn by several million dollars and that the Defendants devised a plan to issue municipal bonds and/or Bond Anticipation Notes (Compl. ¶¶ 86 at 28, 88-93 at 29-30). Plaintiffs claim that Rieth-Riley and other Company Defendants submitted backdated bids designed to create the illusion that work was being performed pursuant to Indiana bid law. (Compl. ¶¶ 94-101 at 31-33).

Finally, Plaintiffs allege that Defendants manipulated the absentee voting process to help Pastrick prevail in the 2003 East Chicago Democratic mayoral primary election. The results of that election were challenged in court, and Special Judge Steven King found "pervasive fraud, illegal conduct, and violations of election laws." (Compl. ¶ 132 at 43) (see *Pabey v. Pastrick*, 816 N.E.2d 1138, 1140). On August 6, 2004, the Indiana Supreme Court ordered a new election and the Court takes judicial notice of that decision and the facts and law contained therein. *Pastrick*, 816 N.E.2d at 1154. This lawsuit was filed on August 8, 2004. Pastrick was subsequently defeated in the special election.

### III.  Discussion

Defendants' Motions to dismiss present several issues for consideration: (1) whether the Indiana Attorney General has standing to assert civil RICO claims; (2) whether the state statutory prerequisites for the Attorney General to assert claims on behalf of the City of East Chicago have been satisfied; (3) whether Plaintiffs' claims are barred by RICO's statute of limitation; (4) whether Plaintiffs' Complaint alleges facts sufficient to state a claim against Defendant Roger &

4

Sons and against Defendant Great Lakes under 18 U.S.C. Sections 1962(c) and (d); and (5) whether the Court should exercise supplemental jurisdiction over Plaintiffs' state law claims. The Court will address each of these issues in turn.

### 1. RICO Standing

"RICO is to be read broadly." *Sedima, S.P.R.L. v. Imtrex Co., Inc.,* 473 U.S. 479, 479-98 (1985) (citations omitted). That is the clear mandate of the Supreme Court in its *Sedima* decision. A broad reading, according to the Supreme Court, "is the lesson not only of Congress' self-consciously expansive language and overall approach, but also because of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" *Id*. at 497, 498 (citing Pub. L. No. 91-452, § 904(a), 84 Stat. 947 (1970)) (other citations omitted). Congress "drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways." *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 248-49 (1989). "The occasion for Congress's action was the perceived need to combat organized crime. But Congress for cogent reasons chose to enact a more general statute, one which, although it had organized crime as its focus, was not limited in its application to organized crime." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 260 (1994) (citations omitted).

RICO provides for a dual system of enforcement – criminal and civil. The private enforcement component of RICO was designed "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general, dedicated to eliminating racketeering activity.'" *Rotella v. Wood*, 528 U.S. 549, 557-58 (2000).

With these general principles as background, the Court now turns to the specific standing

5

requirements for civil RICO claims.

To bring a civil RICO claim, the plaintiff must allege an injury to "business or property by reason of" a racketeering violation. 18 U.S.C. § 1964(c).  The Supreme Court has summarized the requirements for standing in a civil RICO case as follows: "If the defendant engages in a pattern of racketeering activity forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under Section 1964(c)." *Sedima*, 473 U.S. at 495.

The Defendants assert that the Attorney General lacks standing because the State has failed to allege sufficient injury to its "business or property," and because he is not the proper person under federal law to assert RICO claims on the City's behalf.  The Court disagrees.

The parties on both sides devote much time and attention to the issue of whether state or federal law controls the standing issue.  It seems abundantly clear to this Court that federal law controls the issue of standing generally, but that state law may be examined to determine if the requisite injury to "business or property" has occurred.

In *Illinois ex rel. Ryan v. Brown*, 227 F.3d 1042, 1045 (7th Cir. 2000), the Court of Appeals stated "that the question of standing for RICO purposes is indeed a federal one that must be resolved by reference to federal law."  The Court noted that "[t]he mere fact that *Illinois courts* would recognize the plaintiff's standing to bring such an action, however, does not mean that he has standing to bring a *federal action* arising from the same occurrence.  The plaintiff's standing to assert a federally created right is not controlled by state law."  *Id*. (quoting *O'Donnell v. Kusper*, 602 F.Supp. 619, 622-23 (N.D. Ill. 1985) (emphasis in original)).

The Court of Appeals clearly recognized this principle in *Doe v. Roe*, 958 F.2d 763, 768

(7th Cir. 1992), but nevertheless looked to state law to determine whether a property interest existed for the purposes of a civil RICO suit. The court stated, "[w]hile federal law governs most issues under RICO, whether a particular interest amounts to property is quintessentially a question of state law."[1] *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (property interests "are created and their dimensions are defined by" sources "such as state law."). Nothing in *Doe* or its subsequent history indicates that this rule is somehow inapplicable to this case because government entities – the Indiana Attorney General and the City of East Chicago – are involved. This Court must determine whether an injury to plaintiffs' property has occurred, and *Doe* explicitly indicates that state law determines whether a particular interest amounts to property. Therefore, the Court must analyze relevant state law in making this determination.

Plaintiffs identify the State Board of Accounts Act, (Ind. Code § 5-11-1-1, *et seq*. (2005)), as the source of the Plaintiffs' property interest. This law, according to Plaintiffs, bestows ownership of the property injured by the alleged racketeering activity because it grants the Attorney General the exclusive right to pursue recovery for that property. Plaintiffs' Mem. in Opp. to Mot. to Dismiss at 12. A thorough analysis of that law is warranted here.

The State Board of Accounts Act requires the State Board of Accounts (SBOA) to "examine all accounts and all financial affairs of every public office and officer, state office, state institution, and entity." Ind. Code § 5-11-1-9. "If an examination discloses malfeasance, misfeasance, or nonfeasance in office or of any officer or employee, a copy of the report, signed

---

[1] The Court added that it is not required to "adopt a state interpretation of 'business or property' if it would contravene Congress' intent in enacting RICO." *Doe*, 958 F.2d at 768 (citations omitted). That issue will be addressed below.

7

and verified, shall be placed by the state examiner with the attorney general." Ind. Code § 5-11-5-1(a). When such a report is made, it triggers an affirmative duty on the part of the Attorney General: "The attorney general shall diligently institute and prosecute civil proceedings against the delinquent officer, or upon the officer's official bond, or both, and against any other proper person that will secure to the state or to the proper municipality the recovery of any funds misappropriated, diverted, or unaccounted for." Ind. Code § 5-11-5-1(a). The Attorney General has broad discretion in determining for whom he acts as a relator: "Any action brought by the attorney general, as provided in this article, may be brought in the name, as plaintiff, of the State of Indiana, or such municipality or subdivision as it may appear is entitled to recover moneys or to secure other relief in such action." Ind. Code § 5-11-5-4. He also has broad discretion over the claims made and the recovery sought: "The actions brought against any defendants may be joined, as to parties, form, causes of action, in the manner that the Attorney General decides." Ind. Code § 5-11-6-1(h)." "In any action brought under this article, the plaintiff shall be entitled to recover, in addition to the amount misappropriated, diverted or unaccounted for, all penalties and interest as might be recoverable under laws other than this chapter. Ind. Code § 5-11-5-4.

Once the Attorney General files an action, he has exclusive authority to prosecute those claims. No other action may be brought while the Attorney General's action is pending. Ind. Code § 5-11-5-5. The only person who may compromise the claim is the Attorney General, by and with the consent of the state examiner. Ind. Code § 5-11-5-3.

Plaintiffs allege that the Attorney General acquired the right to pursue collection on behalf of the city, and the ability to do so in the name of both the City and the State, when the SBOA certified that an audit of East Chicago had shown that the municipality had made

8

payments to contractors for work done on private property.

The Court agrees with the Attorney General's assertion that the *Brown* and *Life of Mid-America* cases are distinguishable from this case.  This is not a taxpayer derivative suit or citizen suit like *Brown* or a *parens patriae* suit like *Life of Mid-America*.  Rather, the Attorney General is seeking to recover on behalf of the City of East Chicago - a directly injured party.  The State Board of Accounts Act is critical because it charges the Attorney General with both the duty and authority to undertake the City's lawsuit.  This, in essence, makes the Attorney General the owner of the property that has allegedly been injured because the Attorney General has the exclusive right to pursue recovery for that property.

Even if the Plaintiffs have not demonstrated a direct injury of the kind usually required for RICO standing, permitting the Attorney General to pursue this claim is necessary to effectuate the purposes of RICO.  The Defendants do not deny that the Complaint asserts injury to the City's property, only that the Attorney General is not the proper person to assert RICO claims on the City's behalf.  Defendants state that "[i]t is undisputed that the City claims to have been injured by the defendants' purported racketeering activities and, therefore, would be a proper RICO plaintiff.  The problem is that the Attorney General does not have standing under federal law to prosecute the City's RICO claims."  Rieth-Riley's Reply Mem. 3.  This case, however, was filed when Defendant Pastrick was still the Mayor of East Chicago.  Additionally, several of its Common Council members and other city officials are defendants.  The Seventh Circuit has held that when "the directly injured party was under the continuing control or influence of the defendant or his henchman," even parties only *indirectly* injured could recover under RICO.  *Carter v. Berger*, 777 F.2d 1173, 1178 (7th Cir. 1985).  The Court in *Carter* stated:

9

> [A] government may find itself under the sway of the very people whose criminal activities produced the loss from which it suffers. RICO was directed in part against the infiltration of government by organized criminals. Those who bend the government to their ends may also be able to prevent it from filing suit. The machinations of the wrongdoers, combined with the difficulty of inducing agents of the government to exact maximum effort at all times may counsel permitting suits by indirect victims more freely in RICO cases than in the law of antitrust.

Such a situation has been alleged here. To find that the Attorney General lacked standing would effectively require the City to vindicate its own rights – a highly unlikely possibility when, at the time this suit was filed, the City was controlled by the allegedly corrupt Defendants. A broad construction of the injury requirement is therefore necessary to effectuate the purposes of RICO.

The Attorney General, possessing the exclusive right to recover funds allegedly injured by the racketeering activity, has standing to pursue civil RICO claims against these defendants on behalf of the State and the City. Such a result is not only consistent with federal policies, it is essential to effectuate Congress' intent in enacting RICO.

### 2. State Statutory Prerequisites

Certain Defendants argue that the Attorney General, in bringing claims on behalf of the City against these Defendants, is acting beyond the scope of his authority. Roger & Sons Br. In Supp. of Mot. to Dismiss at 9; Dave's Tree Service Mem. In Supp. of Mot. to Dismiss at 5. They argue that the Attorney General has not alleged compliance with the "conditions precedent" for bringing a lawsuit as set forth in Indiana Code Section 5-11-6-1, and that the audit reports relied on by the Attorney General do not set forth improper payments of funds to these Defendants in particular.

A petition of twenty-five interested taxpayers is not a condition precedent, as Defendants assert, for an examination under Section 5-11-6-1(a). This is made clear by the plain language of

the statute, particularly subsection (i), which explicitly contemplates an examination made without a petition first being filed.[2]  Additionally, the language of the chapter itself demonstrates that no taxpayer petition is required.[3]

The Court is also persuaded that the Attorney General is authorized to seek recovery on behalf of the City.  Indiana Code Section 5-11-5-1(a) grants the Attorney General power to collect any related losses from parties he believes to be legally liable once the examiner finds malfeasance, misfeasance, or nonfeasance in office, or of any officer or employee of the public entity.  When seeking recovery through a lawsuit, the Attorney General has the express statutory authority to sue as a relator on behalf of the state and the governmental entity involved.  Ind. Code § 5-11-5-4.

Likewise, an examination of the plain language of the State Board of Accounts Act demonstrates that the Attorney General is not limited to seeking recovery from the individuals named or to the amounts listed in the SBOA report.  The Act states that "[t]he attorney general shall diligently institute and prosecute civil proceedings against the delinquent officer, or upon

---

[2]  Subsection (i) states: If an examination, investigation, or test is *made without a petition first being filed* and the examination, investigation or test shows that the terms of the contract are being complied with, then the expense of the examination, investigation, or test shall be paid by the state . . . .  If such report shows misfeasance, malfeasance, or nonfeasance in public office or shows that the terms of the plans and specifications under which a contract was awarded are not being complied with, it is unlawful to make the report public until the report has been certified to the attorney general.  Ind. Code § 5-11-6-1(i) (emphasis added).

[3]  The provisions of this chapter shall not be construed as repealing any laws in force on March 7, 1923, but *shall be construed only as conferring additional duties and powers* upon the state examiner, deputy examiners, field examiners, and the attorney general of the state and providing additional remedies as to the matters set forth in those laws, and all of the remedies provided in this chapter *shall be additional and concurrent and not exclusive*.  Ind. Code § 5-11-6-5(a) (emphasis added).  This Section clearly shows that public contracts and the payments made pursuant to them may be examined by the state examiner under Ind. Code § 5-11-1.

the officer's official bond, or both, *and against any other person* that will secure to the state or to the proper municipality the recovery of *any* funds misappropriated, diverted, or unaccounted for." Ind. Code § 5-11-5-1(a) (emphasis added). The statute also states that, "[i]n any action brought under this article, the plaintiff shall be entitled to recover, *in addition to* the amount misappropriated, diverted or unaccounted for, all such penalties and interest as might be recoverable under laws other than this chapter." Ind. Code § 5-11-5-4 (emphasis added). The law clearly gives the Attorney General broad discretion to pursue defendants that he believes are liable for losses to the City.

The Court also finds that the Complaint more than adequately sets forth the alleged improper payments received by Dave's Tree Services. A liberal reading of the Complaint is required at this stage of the proceeding, and the substantive paragraphs of the Complaint, along with the reports included in Complaint Appendices E & F, satisfy the requirements of notice pleading.

### 3. Statute of Limitations

Defendants seek to dismiss the Plaintiffs' federal RICO claims on the grounds that they are barred by the four-year statute of limitations. *See Agency Holding Corporation v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156-56 (1987). Specifically, Roger & Sons asserts that any injury to the Plaintiffs flows from Rogers' receipt of payments for work it performed at the request of City officials and therefore the Plaintiffs' cause of action began to accrue on the date Rogers received such payments. The date of the last of such payments is alleged as February 29, 2000, which is more than four years before the Complaint was filed. (Compl. App. C-1).

In determining the start of the statute of limitations period for federal civil RICO claims,

the Seventh Circuit has adopted the "injury discovery or accrual rule". *See McCool v. Strata Oil Company*, 972 F.2d 1452, 1465 (7th Cir. 1992). Under this rule, a RICO claim does not accrue until a plaintiff has discovered or should have discovered his injury. *Id*.

Plaintiffs have alleged that the injury in question was discovered on November 6, 2001 when the audit conducted by the SBOA was certified to the Attorney General. As noted above, this Court must accept as true all of Plaintiffs' well-pleaded factual allegations. Applying this standard to the Seventh Circuit's "injury discovery or accrual rule," the Plaintiffs' case, at this stage of the proceedings, cannot be dismissed for failure to satisfy the statute of limitations requirements. In the event that any defendant is deadly serious about asserting a defense based on the statute of limitations at a later stage, a separate procedure will be held before a United States Magistrate Judge. This proceeding will include the hearing of evidence to deal solely with the statute of limitations issue. Any Defendant who wants to participate in such a proceeding must notify this Court in writing within 60 days of the issuance of this Order. At this stage of the proceedings, however, Defendants cannot prevail on this issue.

**4. Failure to State a Claim**

Defendants Roger & Sons and Great Lakes argue that the Plaintiffs' 18 U.S.C. Sections 1962(c) and (d) must be dismissed for failure to state a claim upon which relief can be granted.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). A plaintiff alleging a violation of Section 1962(c) must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

13

activity." *Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 472 U.S. 479, 496 (1985)).

The Complaint properly states a Section 1962(c) claim against Roger & Sons and Great Lakes.  It sufficiently alleges that Roger & Sons engaged in a "pattern of racketeering activity" and that Roger & Sons knowingly participated in the racketeering activity.  "Racketeering activity" is defined by 18 U.S.C. Section 1961(1) and includes "'any act of threat involving' specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses.'" *H.J., Inc. v. N. W. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (citing 18 U.S.C. § 1961(1)).  A "pattern of racketeering activity" is defined as requiring "at least two acts of racketeering . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  Furthermore, such multiple racketeering acts must be "related," such that they "amount to or pose a threat of continued criminal activity." *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 779 (7th Cir. 1994) (quoting *H.J., Inc.*, 492 U.S. at 239).  A pattern may be established by showing "multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *H.J., Inc.*, 492 U.S. at 237.

The Complaint alleges that Roger & Sons and Great Lakes violated 18 U.S.C. § 2314, which prohibits the transportation, transmission, or transfer in interstate commerce of money or property having a value of $5,000 or more, knowing the money or property to have been stolen or converted.  18 U.S.C. § 1961(1)(B); 18 U.S.C. § 2314.  The allegations contained in paragraphs 1, 78-81, 122-138, and 144-145 are more than sufficient to satisfy the pleading requirements with respect to Plaintiffs' Section 1962(c) claim against Roger & Sons.  Furthermore, those

14

paragraphs, along with paragraphs 28, 37, 64-71, and 107 are sufficient to satisfy the pleading requirements with respect to Great Lakes.  The Court will not require the Plaintiffs to prove the merits of their case on the face of the Complaint.  Rather, it is sufficient that they have given fair notice of the Plaintiffs' claim.  *See Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999) (complaint must "provide the defendant with fair notice of the claim," but it "need not spell out every element of a legal theory."); *see also Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002) ("A complaint [need] only give notice of the plaintiff's claim, and not . . . spell out the facts underlying the claim.").

Plaintiffs have also sufficiently pled their Section 1962(d) claim against Roger & Sons and Great Lakes.  Section 1962(d) makes it unlawful "for any person to conspire to violate [§ 1962(a), (b), or (c)]."  18 U.S.C. §1962(d).  To state a claim under § 1962(d), a plaintiff must allege: (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to achieve these goals.  *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998).  A cause of action under Section 1962(d) must be predicated on injuries caused by an overt act of racketeering or that is otherwise unlawful under RICO.  *Beck v. Prupis*, 529 U.S. 494, 505-07 (2000).

The allegations contained in paragraphs 153 and 154 (and supplemented by Appendices A-D) of the Complaint are more than sufficient to satisfy the pleading requirements as to both Roger & Sons and Great Lakes with respect to Plaintiffs' Section 1962(d) claim.

The Plaintiffs have satisfied federal notice pleading requirements and have sufficiently

15

stated Section 1962(c) and 1962(d) claims against Roger & Sons and Great Lakes.

### 5. Supplemental Jurisdiction

Defendants urge that this Court decline its supplemental jurisdiction over the state law claims. The federal law claims in this case are well pled, and the Court will continue to exercise its supplemental jurisdiction over the state-law claims pursuant to 28. U.S.C. § 1367.

## IV. Conclusion

For all of the reasons discussed above, Defendants' motions to dismiss are **DENIED**.

**IT IS SO ORDERED.**

**Date: August 29, 2005**                                             **S/ ALLEN SHARP**
                                                                      **ALLEN SHARP, JUDGE**
                                                                      **UNITED STATES DISTRICT COURT**