UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| STATE OF INDIANA and CITY OF EAST CHICAGO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CAUSE NO. 3:04-CV-506 AS |
| ROBERT A. PASTRICK, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This is a civil case that springs from the successful criminal prosecution of several corrupt city officials. The Plaintiffs, the State of Indiana and the City of East Chicago, seek to recover misappropriated city funds alleging that the Defendants engaged in a pattern of racketeering activities while conducting the affairs of the City of East Chicago. These allegations closely follow the parallel criminal cases in which many of the individual Defendants in this case either plead guilty or were convicted of similar conduct.

In September 2005 and October 2005, Defendants Timothy Raykovich, Robert Pastrick, George Weems, and Frank Miskowski filed counterclaims against the Plaintiffs alleging that the Plaintiffs must defend, indemnify, and hold harmless the Defendants, as well as pay the attorneys' fees and costs incurred by the Defendants in litigating this action. On December 21, 2005, Plaintiffs filed a motion to dismiss the counterclaims. In addition, on March 1, 2006, six Defendants, Raykovich, Pastrick, Weems, Miskowski, TRI, Inc., and Calumet Concrete & Masonry, Inc., filed motions for summary judgment asserting that the Plaintiffs had not brought their claims within the applicable statute of limitations. On October 6, 2005, pursuant to 28 U.S.C. § 636(b)(1)(B), District Judge Allen Sharp referred this matter to the undersigned

Magistrate Judge to issue a report and recommendation for the disposition of these motions. For the following reasons, this Court **RECOMMENDS** that the Defendants' motions for summary judgment [Doc. Nos. 321, 323, 325, 328, 333, & 337] be **DENIED** and that Plaintiffs' motion to dismiss [Doc. No. 292] be **DENIED IN PART AS MOOT** and **DENIED IN PART**.

**I.  BACKGROUND**

    A.    <u>The Allegations</u>

Plaintiffs allege that the Defendants in this action conducted the affairs of the City of East Chicago through a pattern of racketeering activities. They allege that these activities began in August 1996 when Pastrick, as mayor of the City of East Chicago, established a "Gaming Trust" to illegally divert money and property belonging to the City of East Chicago for his own personal and political use. (Compl. ¶¶ 39 at 10, 45 at 14, and 57-61 at 18-20). Plaintiffs further allege that beginning in 1999, the Defendants unlawfully used more than $18 million belonging to the City of East Chicago to construct sidewalks, driveways, patios, porches, and parking lots, and to trim trees on public and private property, the purpose of which was to corrupt the electoral process in the May 1999 East Chicago Democratic mayoral primary by buying votes. (Compl. ¶¶ 2 at 1, 45 at 14, 46-49 at 15-16, and 67-85 at 22- 28).

Plaintiffs contend that this scheme caused the City of East Chicago's general fund bank account to become overdrawn by several million dollars. The Defendants, in order to cover the deficiency, devised a plan to issue municipal bonds and/or bond anticipation notes. (Compl. ¶¶ 86 at 28, 88-93 at 29-30). Plaintiffs claim that various contractor and/or vendor Defendants submitted backdated bids designed to create the appearance that the work was being lawfully performed pursuant to the Indiana bid law. (Compl. ¶¶ 94-101 at 31-33).

2

B. <u>Events Preceding the Filing of the Complaint</u>

The material facts regarding the events that preceded the filing of the complaint are not in dispute. The Indiana State Board of Accounts ("SBOA"), a state agency, is responsible for conducting audits on governmental entities, including the City of East Chicago. In 1999, the SBOA's field supervisor, Mary Jo Small, first became aware of the sidewalk replacement program when an article ran in the newspaper. Around February 2000, the SBOA began its 1999 audit of the City of East Chicago which ultimately led to the SBOA discovering that approximately $70,000 of work had been done on private property. During the 1999 audit, SBOA employees received calls from the Federal Bureau of Investigation ("FBI") regarding the sidewalk replacement program. The FBI requested that the SBOA audit the program.

Upon conclusion of the audit, the SBOA submitted a report to the State Examiner, which was filed stamped on October 11, 2000. In the report, the SBOA raised concerns that no bids were taken for a paving and concrete program.

In 2001, the SBOA continued its investigation by conducting the 2000 audit. Upon conclusion of the 2000 audit, the SBOA again submitted a report to the State Examiner. The State Examiner certified the 2000 audit on November 6, 2001. The second report indicated that the City of East Chicago entered into informal agreements with seven contractors to pay for nonpublic concrete work, including charges against Weems, Maldonado, and Miskowski in the amount of $2,540,158.06. After receiving a copy of the 2000 audit from the State Examiner, the Attorney General, on behalf of the Plaintiffs, filed the complaint on August 3, 2004.

C.  Pending Motions

1.  Defendants' Motions for Summary Judgment

The pending motions for summary judgment essentially argue that the Plaintiffs waited too long to file their complaint and that the Plaintiffs' claims are barred by the applicable statute of limitations. By way of background, after Plaintiffs filed their complaint on August 3, 2004, this case was briefly stayed pending the resolution of the criminal prosecutions. The court lifted the stay in December 2004 and shortly thereafter, various Defendants filed motions to dismiss asserting standing and statute of limitations issues. On August 29, 2005, the court denied the motions to dismiss, but permitted any party to reassert the statute of limitations defense after notifying the court within sixty days of the order. Fourteen defendants notified this Court that they intended to pursue a statute of limitations defense.

This Court also allowed the parties to conduct limited discovery directed solely to the statute of limitations defense and ordered the parties to file their dispositive motions regarding the statute of limitations defense by March 1, 2006. Only six of the fourteen Defendants that gave notice of their intention to reassert the statute of limitations defense actually filed motions for summary judgment.

2.  Plaintiffs' Motion to Dismiss Defendants' Counterclaims

Shortly after the Defendants' motions to dismiss were denied, Raykovich filed his answer and asserted counterclaims against the Plaintiffs. Raykovich argues that pursuant to bid agreements and consulting agreements, the City of East Chicago agreed to defend, indemnify, and hold them harmless. In addition, Pastrick, Weems, and Miskowski also filed their answers and asserted counterclaims against Plaintiffs. Pastrick, Weems, and Miskowski's counterclaims

4

allege that Plaintiffs sued them in their official capacities and therefore, they are statutorily entitled to be defended, indemnified, and held harmless from the Plaintiffs' claims. They also allege that pursuant to a city ordinance and state law, they are entitled to have their attorneys' fees and expenses paid by the City of East Chicago. On December 21, 2005, Plaintiffs filed a motion to dismiss these counterclaims asserting that they were not ripe and that they failed to state a claim upon which relief could be granted.

## II. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v.

5

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

B.  Applicable Law

Plaintiffs' complaint alleges a pattern of racketeering activities wherein the Defendants used money belonging to the City of East Chicago to construct sidewalks, driveways, patios, porches, and parking lots and to trim trees on public and private property in order to buy votes in the May 1999 East Chicago Democratic Mayoral primary. These allegations constitute a civil RICO cause of action. The parties agree that civil RICO claims are subject to a four-year statute of limitations. See Agency Holding Corporation v. Malley-Duff, et al., 483 U.S. 143, 156 (1987). Because Plaintiffs' complaint was filed on August 3, 2004, in order to be within the statute of limitations, their cause of action must have accrued on or after August 3, 2000.

The Seventh Circuit incorporates the discovery rule for determining when a cause of action begins to accrue. McCool v. Strata Oil Company, 972 F.3d 1452 (7th Cir. 1992). Under the discovery rule, a cause of action accrues when a plaintiff has discovered or should have discovered his injury, even if he has not yet discovered the pattern of racketeering. Id. at 1465. In determining the date of accrual, there is an important distinction between discovery of an injury and discovery of a cause of action. Id. After the action accrues, the doctrines of equitable tolling and equitable estoppel may toll the statute of limitations in special limited situations. See generally Bontkowski v. First Nat'l Bank, 998 F.2d 459 (7th Cir. 1993); Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990).

C.  Analysis

The parties spent the majority of their memorandums addressing the doctrines of equitable tolling and equitable estoppel.  However, before addressing these equitable principles, this Court must first determine when the cause of action accrued.  If the accrual date was on or after August 3, 2000, then the Plaintiffs have filed their complaint within the applicable time frame and this Court need not determine whether either of these equitable doctrines apply.  It is only if this Court determines that the date of accrual was before August 3, 2000, that it will be necessary to determine whether equitable tolling or equitable estoppel have tolled the statute of limitations.

Defendants argue that this action accrued as soon as the SBOA learned of the injury.  Without citing to any legal authority to support their position, the Defendants argue that because the SBOA was a state agency, any knowledge that it acquired should be imputed to the Plaintiffs.  Consequently, because the SBOA was aware of the newspaper article, the phone calls from the FBI, and the discoveries in the audits before August 3, 2000, the cause of action similarly accrued before August 3, 2000, and is therefore time barred.  However, due to the unique circumstances surrounding the parties in this case, this Court cannot agree with the Defendants' analysis.

Under Indiana law, the SBOA is the agency authorized to conduct audits, but does not have the authority to file lawsuits to recover misappropriated funds.  Rather, Indiana Code § 5-11-5-1 requires the SBOA to file a signed report with the State Examiner, who then certifies and distributes the report to the respective parties.  If the report discloses malfeasance, misfeasance, or nonfeasance in office or of any officer or employee, the State Examiner certifies a copy of the

7

report and sends it to the Attorney General.  Id.  The Attorney General is then required to diligently institute and prosecute civil proceedings against the delinquent officer, and against any other proper person that will secure to the state or to the proper municipality the recovery of any funds misappropriated, diverted, or unaccounted for.  Id.

As previously articulated, the cause of action begins to accrue when the plaintiff has discovered, or should have discovered his injury.  McCool, 972 F.2d at 1465.  In the cases that Defendants cite, and unlike the present case, the plaintiff was the party who had both the ability to discover the injury and file the lawsuit.[1]  This Court concludes that mere knowledge of an injury without the ability to seek redress for the injury is insufficient to trigger the running of the applicable statute of limitations.  This conclusion is similar to the law governing an injury sustained by a minor or someone with a legal disability.  A minor may realize that he has been injured, but because he is legally incapable of filing a suit on his own behalf, he has up to two years after his disability has been removed to file his lawsuit.  See Ind. Code § 34-11-6-1; Seach v. Armbruster, 725 N.E.2d 875, 877, n.2 (Ind. Ct. App. 2000) (stating that the minor was not able to bring a suit on his own behalf).  However, a guardian or next of friend may bring a legal action on behalf of the minor if the guardian is aware of the minor's injury.  See Ind. Code § 34-9-2-1 (stating that any court may permit any person, as next of friend, to prosecute a suit on behalf of a minor).

As Ind. Code § 5-11-5-1 illustrates, the SBOA's knowledge of an injury is insufficient to trigger the running of the statute of limitations because it had no authority to file a lawsuit to

---

[1]This Court notes that the primary analysis in the cases upon which the parties rely focus on the principle of equitable tolling.  As this Court is addressing the actual accrual date of the cause of action and not whether the statute had been tolled, those cases are not directly on point.

recover the misappropriated funds once it discovered the injury. Consequently, the SBOA's knowledge is irrelevant in determining when the cause of action accrued. Rather, this Court must turn its attention to the Attorney General and determine when he discovered or should have discovered the injury. The undisputed facts show that the Attorney General did not discover the injury until he received the certified reports from the State Examiner on October 11, 2000 and November 6, 2001.[2] Consequently, these dates are when the cause of action accrued because it is only after these dates that the Attorney General had both the knowledge of an injury and the ability to file a lawsuit seeking redress for the injury. Prior to these dates the SBOA had the knowledge, but not the power to act. And the Attorney General, though capable of filing a lawsuit, had no knowledge of an injury.

Having now determined that the cause of action accrued as early as October 11, 2000 and that this complaint was filed on August 3, 2004, it is easy to conclude that the Attorney General filed this lawsuit within four years of learning of the injury, and as a result, the complaint was timely filed. Because this Court has now concluded that the Plaintiffs filed their action within the applicable time frame, there is no need to address whether the doctrines of equitable tolling or equitable estoppel tolled the statute. As a result, this Court recommends that Defendants' motions for summary judgment be denied.

---

[2]The Plaintiffs assert that they did not acquire knowledge of the injury until the 2000 audit was certified on November 6, 2001. However, the 1999 audit, which was certified on October 11, 2000, disclosed that no bids had been taken for the Sidewalk Replacement program. As a result, one could potentially argue that the 1999 audit provided sufficient notice of an injury to trigger the statute of limitations. However, it is immaterial which report actually provided the Attorney General with the discovery of the injury because both the 1999 audit and the 2000 audit were certified after August 3, 2000.

### III. PLAINTIFFS' MOTION TO DISMISS

On December 21, 2005, Plaintiffs filed a motion to dismiss five of the Defendants' counterclaims which asserted a duty to indemnify, defend, and hold harmless. Plaintiffs assert that the counterclaims are not ripe and that they do not state a claim upon which relief could be granted.[3]

    A.    <u>Motion to Dismiss Standard</u>

Fed. R. Civ. P. 12(b)(1) authorizes dismissal of counterclaims in which the Court has no jurisdiction. In analyzing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the pleadings. <u>Long v. Shorebank Dev. Corp.</u>, 182 F.3d 548, 554 (7th Cir. 1999). The court must "presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." <u>Id.</u> However, the court will accept that party's well pled factual allegations as true and draw reasonable inferences in his favor. <u>Capital Leasing Company v. Federal Deposit Insurance Corporatoin</u>, 999 F.2d 188, 190 (7th Cir. 1993).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal is appropriate if the complaint sets forth no viable cause of action upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); <u>Challenger v. Ironworkers Local No. 1</u>, 619 F.2d 645, 649 (7th Cir. 1980). In assessing the propriety of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them as true. <u>Jackson v. E.J. Brach Corp.</u>, 176 F.3d 971, 977 (7th Cir. 1999). A party's claims are subject to dismissal

---

[3] In Plaintiffs' motion, they request that this Court dismiss Reith-Riley's counterclaims. However, Reith-Riley's counterclaims have now been voluntarily dismissed from this action. Plaintiffs' motion with regards to Reith-Riley's counterclaims is now moot.

only if it is clear that he can prove no set of facts consistent with the allegations in the complaint that would entitle him to relief. Scott v. City of Chicago, 195 F.3d 950, 951 (7th Cir. 1999). The Court is not required to accept the plaintiffs' legal conclusions. Fries v. Helsper, 146 F.3d 452, 456 (7th Cir. 1998), cert. denied 525 U.S. 930 (1998).

    B.        Plaintiffs' Rule 12(b)(1) Motion to Dismiss

Plaintiffs assert that Defendants' request for declaratory judgment must fail because the claim is not ripe. Specifically, Plaintiffs argue that Defendants' counterclaims must be dismissed in their entirety because decisions regarding indemnity should be postponed until the underlying liability has been decided. The Seventh Circuit has repeatedly held that "decisions about indemnity should be postponed until the underlying liability has been established." Lear Corp. v. Johnson Elec. Holdings, Ltd., 353 F.3d 580, 583 (7th Cir. 2003). However, the court also stated that a defense may be required even if there never turns out to be any liability to indemnify. Id.

As illustrated by the language in Lear, the issue of the duty to defend and attorneys' fees are separate from the duty to indemnify. While this Court could dismiss the indemnification counterclaim while retaining jurisdiction over the duty to defend claim, this approach would not promote judicial efficiency in resolving a case that is already over two and a half years old. If necessary, in order to avoid unnecessary litigation on the indemnity issue, this Court could stay the proceedings related to the indemnity issues. See e.g. Premcor USA, Inc. v. Am. Home Assur. Co., 400 F.3d 523, 530 (7th Cir. 2005) (remanding a case involving the issue of indemnity for a dismissal or a stay of the proceedings). Because Defendants' counterclaims relating to the duty to defend are ripe, this Court does have jurisdiction and as a result, this Court

11

recommends that Plaintiffs' Rule 12(b)(1) motion to dismiss be denied. However, following Seventh Circuit precedent, this Court also recommends that the issue of indemnity be stayed until resolution of the underlying liability in this action. Additionally, because the issues of duty to defend and attorneys' fees are distinct issues, this Court must also address Plaintiffs' Rule 12(b)(6) motion to dismiss with regards to these issues.

  C. <u>Plaintiffs' Rule 12(b)(6) Motion to Dismiss</u>

Plaintiffs aruge that Pastrick, Weems, and Miskowski's counterclaims fail to state a claim upon which relief could be granted. In support of their motion, Plaintiffs rely upon four arguments: 1) the Defendants were sued in their individual capacities, not their official capacities; 2) the Defendants have failed to reference the specific statute in their counterclaims which entitle them to relief; 3) any statute or city ordinance once providing relief has been superceded; and 4) Defendants' request is against public policy.

    1. <u>The Defendants Counterclaims are Sufficient to Support their Claims that they were Sued in their Official Capacities</u>

In their counterclaims, the Defendants have asserted that because they were sued in their official capacities, they are entitled to a defense, indemnification, and reasonable attorneys' fees and costs incurred in defending this litigation. Plaintiffs contend that their complaint clearly alleges that the individuals are being sued in their individual capacities, not their official capacities, and therefore, the counterclaims must be dismissed. However, Plaintiffs' complaint does not clearly state that the Defendants are being sued in their individual capacities. Rather the Defendants are identified as individuals. Because the Plaintiffs identified some Defendants as "Company Defendants," one could interpret the label "Individual" as merely distinguishing

between the company defendants and the individual defendants, and not that the individuals are being sued in their individual capacities.

Furthermore, Ind. Code § 34-13-3-5(e) states that a governmental entity should provide counsel for and pay all costs and fees regardless of whether the employee can or cannot be held personally liable for the loss. Consequently, it appears that it may not matter whether the Defendants were sued in their official or individual capacities, but rather whether the acts were within the scope of their employment. Thus framed, this issue is better resolved through a motion for summary judgment rather than a motion to dismiss.

2. Defendants' Counterclaims Sufficiently Allege a Statutory Right

Plaintiffs next argue that Defendants' counterclaims are not sufficient because they do not specifically set forth the city ordinance or state statute upon which they rely. However, Fed. R. Civ. P. 8(a) only requires a short, plain statement of the claim showing that the pleader is entitled to relief. While not identifying the statute with specificity, Defendants did include a short plain statement of the claim and put Plaintiffs on notice that they were seeking their alleged statutory right to a defense, indemnity, and fees. Defendants' counterclaims are sufficient enough to overcome Plaintiffs' motion to dismiss.

3. Defendants' Counterclaims are Sufficient Enough to Support an Allegation that they may be Entitled to Fees

Plaintiffs' third basis upon which their motion to dismiss rests is that any statutory right that Defendants may have had has been superceded by recently enacted Indiana law. Under Rule 12(b)(6), this Court must look at the face of the counterclaims to determine whether it is clear that Defendants can prove no set of facts consistent with the allegations that would entitle them to relief. Looking strictly at the face of the counterclaims, Defendants have sufficiently

13

alleged that the East Chicago Municipal Ordinance 02-0011 and Ind. Code § 34-13-3-5(e) provides for a legal defense or reimbursement of all costs and fees incurred by an employee in defending an action. As the Defendants were employees of the City of East Chicago, the allegations on their face are sufficient to withstand a motion to dismiss.

Plaintiffs, however, argue that the city ordinance and the state statute have been superceded by Ind. Code § 36-1-17-2. The recently enacted statute is silent with regards to its retroactivity. Therefore, because there may be some ambiguity regarding the construction of the competing statutes, this Court is not convinced that there are no circumstances under which Defendants may prevail on their counterclaims. This Court also notes that even if the new statute had addressed its retroactivity, the new statute may trigger due process concerns.[4] Consequently, this issue would also be better addressed in a motion for summary judgment or at the end of the litigation.

    4.    Public Policy

Finally, Plaintiffs cite to State v. Evans, 810 N.E.2d 335 (Ind. 2004) where the Indiana Supreme Court held that the State did not have to provide a defense for the defendant, a former prosecutor, in defending an action because the State should not have to finance both sides of the litigation. This Court is concerned with the potential result that the State may be required to fund both the civil prosecution and civil defense of corrupt civil officials. However, it is not the function of this Court on a Rule 12(b)(6) motion to articulate state policy. The public policy issues raised are better left to the governor, legislature and the courts of the State of Indiana to

---

[4] It is possible that one could argue that a cause of action, once acted upon, is a property interest which once granted, may not be withdrawn absent due process.

address. As a result, this Court recommends that Plaintiffs' Rule 12(b)(6) motion to dismiss be denied.

IV. ANCILLARY MATTERS

Because the parties have not yet had the opportunity to conduct discovery on the merits, this Court now sets this matter for a Fed. R. Civ. P. 16(b) preliminary pretrial conference on **August 14, 2006** at **3:00 p.m. (E.D.T.)** in Room 201, Robert A. Grant Courthouse, 204 S. Main Street, South Bend, Indiana so that this Court may establish the discovery limitations and deadlines. In accordance with Fed. R. Civ. P. 26(f), the parties are **ORDERED** to submit a revised planning report by **July 21, 2006.**

V. CONCLUSION

For the aforementioned reasons, this Court **RECOMMENDS** the following:

- **DENY** Defendants' motions for summary judgment [Doc. Nos. 321, 323, 325, 328, 333, & 337];

- **DENY IN PART AS MOOT** and **DENY IN PART** Plaintiffs' motion to dismiss [Doc. No. 292];
    - **DENY AS MOOT** Plaintiffs' motion as it relates to Reith-Riley;
    - **DENY** Plaintiffs' motion as it relates to Raykovich, Pastrick, Weems, and Miskowski;

- **STAY** Raykovich, Pastrick, Weems, and Miskowski's counterclaims on the issue of indemnity until resolution of the underlying liability. However, the remainder of the Defendants' counterclaims shall proceed.

This Court now sets this matter for an in-court Rule 16(b) preliminary pretrial conference on **August 14, 2006**, at **3:00 p.m. (E.D.T.)**. The parties are **ORDERED** to submit a revised planning report by **July 21, 2006.**

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or**

15

> recommendations. Fed.R.Civ.P. 72(b).  **FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

Dated this 19th Day of June, 2006.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
